IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



| | |
|---|---|
| COOK, HEYWARD, LEE, HOPPER & FEEHAN, P.C., a Virginia Professional Corporation,<br><br>and<br><br>DAVID D. HOPPER, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP VIRGINIA ACQUISITIONS, LLC, TRUMP VINEYARD ESTATES, LLC, and THE TRUMP ORGANIZATION, INC.,<br><br>and<br><br>JASON GREENBLATT, Individually,<br><br>Defendants. | Civil Action No. 3:12CV131<br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT

COME NOW Plaintiffs Cook, Heyward, Lee, Hopper & Feehan, P.C., and David D. Hopper (collectively, "Plaintiffs"), and for and as their Complaint against Defendants Trump Virginia Acquisitions LLC ("TVA"), Trump Vineyard Estates LLC ("TVE"), and The Trump Organization, Inc. (collectively, the "Trump Entities") and Jason Greenblatt (collectively, with the Trump Entities, "Defendants"), state as follows:

### NATURE OF THE ACTION

1. This is an action to recover damages arising out of the Trump Entities' breach of contract with Plaintiff Cook, Heyward, Lee, Hopper & Feehan, P.C. ("Cook, Heyward" or the "Firm") and damages resulting from defamatory statements made by Defendants and/or their agents regarding Cook, Heyward and David D. Hopper.

## THE PARTIES

2. Plaintiff Cook, Heyward is a professional corporation engaged in the practice of law and organized under the laws of the Commonwealth of Virginia, with its principal place of business located in Glen Allen, Virginia.

3. Plaintiff David D. Hopper is an attorney and a member, in good standing, of the Virginia State Bar. He is a citizen of the Commonwealth of Virginia and a member of Cook, Heyward.

4. Defendants Trump Virginia Acquisitions, LLC and Trump Vineyard Estates, LLC are limited liability companies organized under the laws of the State of Delaware, with their principal places of business located in the State of New York. On information and belief, the defendants' members are citizens of New York. Defendants are owned by Donald J. Trump, a citizen of New York, or by entities that are controlled by him and are themselves citizens of New York. The Trump Organization, Inc. is a domestic business corporation organized under the laws of the State of New York, with its principal place of business located in New York.

5. Defendant Jason Greenblatt is Executive Vice President and General Counsel of The Trump Organization, Inc. Upon information and belief, Greenblatt is a member of the New York State Bar and a citizen of the State of New York or a state other than Virginia.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332, as the parties are citizens of different states and as the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as the contract that is the subject of this action was formed, in part, in this district, performance by

Cook, Heyward was substantially made in this district, and the Trump Entities' breach of their duty to pay occurred in this district. Venue is further proper pursuant to 28 U.S.C. §1391, as the defamatory statements that are the subject of this action were published, and subsequently republished, in this district.

8. This Court has personal jurisdiction over Defendants pursuant to the Code of Virginia § 8.01-328.1(A). Specifically, TVA and TVE have transacted business in Virginia within the meaning of Va. Code §8.01-328.1(A)(1) by contracting with Plaintiffs for legal services via e-mail and telephone directed to Virginia, and by participating in a foreclosure sale in Virginia underlying the declaratory judgment action described hereinbelow. Additionally, on information and belief, TVA and TVE also have interests in real property in the Commonwealth, within the meaning of Va. Code § 8.01-328.1(A)(6), which interests were directly at issue in the declaratory judgment action described hereinbelow. Finally, Defendants regularly do business and/or engage in other persistent conduct in the Commonwealth through the ownership of a winery in Albemarle County, Virginia, their dealings with Bank of America in Virginia, and their contacts with Plaintiffs for legal services in Virginia. Thus, jurisdiction as to all Defendants is proper pursuant to Virginia Code § 8.01-328.1(A)(4) because Defendants made defamatory statements about Plaintiffs which have caused tortious injury in the Commonwealth.

## FACTS

9. On or about September 14, 2011, the Trump Entities retained Cook, Heyward to provide legal services on behalf of TVA and TVE with regard to the defense of a declaratory judgment action (Civil Action No. 3:11-cv-00053) (the "Declaratory Judgment action") filed in the United States District Court for the Western District of Virginia, Charlottesville Division.

10. Cook, Heyward provided the Trump Entities with the requested legal services and representation, including costs advanced on behalf of the Trump Entities, pursuant to the terms of an oral agreement (the "Agreement") initiated by mutual consent.

11. Specifically, the agreed-upon legal services were performed by David D. Hopper ("Hopper"), among others, and Hopper served as attorney-of-record in the Declaratory Judgment action.

12. On a monthly basis, Cook, Heyward provided the Trump Entities with invoices itemizing its fees earned and the costs advanced in the course of the above-described attorney-client relationship, in the total amount of $94,511.35.

13. An initial, thirty (30)-day invoice was provided to the Trump Entities, which requested that the invoice be reformatted. Plaintiffs complied with that request the same day the request was made. The Trump Entities raised no objection to the reformatted invoice. When the Firm later contacted the Trump Entities regarding the status of the initial invoice, the Trump Entities again voiced no objection to the invoice, but indicated that they were unsure of its payment status, instructed the Firm to send another copy of the invoice along with the Firm's second invoice, and continued to request additional services in connection with the Declaratory Judgment action.

14. The Firm continued its representation of the Trump Entities and sent a sixty (60)-day invoice reflecting fees and costs to date, including the amount reflected in the previously-sent thirty (30)-day invoice.

15. The Trump Entities raised no objection to this invoice upon receipt but nonetheless failed to pay Cook, Heyward the fees the Firm earned and the costs it advanced in its

representation of the Trump Entities, while continuing to request and receive additional professional services from the Firm.

16. In response to another inquiry regarding the status of payment, the Trump Entities, through their agents David Cohen and Eric Trump, informed Plaintiffs that although the Trump Entities had no problem with the quality of the Firm's work, the bills were "too high" and that the Firm should reduce its fees and/or agree to cap its fees while continuing the representation. After Eric Trump suggested that the Firm reduce its fees by approximately seventy percent (70%), the Firm and Hopper told him that they would file a motion to withdraw as counsel in the Declaratory Judgment action. Eric Trump, on behalf of the Trump Entities, consented to the withdrawal. On or about December 2, 2002, Michael Cohen, an agent of the Trump Entities who identified himself as being employed in the Trump Entities' General Counsel's office, requested that Hopper and the Firm reconsider its decision, and reiterated that the Trump Entities had no issue with the quality of the Firm's or Hopper's work. When informed that the Firm and Hopper still intended to withdraw, Michael Cohen informed Hopper and Firm member Gary Cook that unless the Firm agreed to cut and cap its fees and continue with the representation, the Firm and its members should expect very bad publicity.

17. On or about December 2, 2011, following the Trump Entities' repeated refusal to pay Cook, Heyward the sum due and owing under the Agreement in response to demands for payment, the Firm filed a motion, with the consent of the Trump Entities, seeking to withdraw from representation in the Declaratory Judgment action. None of the Trump Entities filed any response to the motion to withdraw. This motion was subsequently granted by Order of the United States District Court for the Western District of Virginia, Charlottesville Division, entered December 15, 2011.

18. Also on or about December 2, 2011, the Trump Entities, through their General Counsel, Jason Greenblatt ("Greenblatt"), gave an interview to Virginia Lawyers' Weekly ("VLW") in which Greenblatt characterized Plaintiffs' work as "shoddy," and further stated, in pertinent part, that "we [Greenblatt and the Trump Entities] were very, very disappointed over their [Plaintiffs'] work quality and their billing practices .... We needed to redo their work multiple times in-house."

19. Greenblatt's statements, made both individually and in his capacity as an officer and General Counsel of The Trump Organization and on behalf of the Trump Entities, were false. As Greenblatt was aware, the Trump Entities had not needed to, and did not, "redo [Plaintiffs'] work multiple times." Indeed, Greenblatt, Eric Trump, David Cohen, and Michael Cohen, all acting on behalf of the Trump Entities, had repeatedly praised the quality of the Plaintiffs' work. Nor was there any question regarding the propriety of Plaintiff's billing practices.

20. Greenblatt's statements, made individually and in his capacity as an officer and General Counsel of The Trump Organization and on behalf of the Trump Entities, were republished in VLW on December 2, 2011, and were subsequently republished in Richmond BizSense's News Feed on December 5, 2011.

21. Greenblatt's statements, made individually and in his capacity as an officer and General Counsel of The Trump Organization, and on behalf of the Trump Entities, were directed toward the Firm in its entirety and against Hopper in particular, as Hopper was attorney-of-record in the case and as his name appeared on the publicly-available motion to withdraw to which Greenblatt's statements referred, and which was referenced in the December 2, 2011 VLW article.

22. The statements constitute defamation and/or defamation *per se*, as they were false and prejudiced Plaintiffs in their profession, the practice of law.

23. The statements, taken in context, further (1) stated, and/or were intended to convey, that Plaintiffs were unfit to perform the duties of their profession, and (2) implied that they lacked credibility, integrity, and truthfulness because, the statements implied, Plaintiffs had been dishonest in their billing practices.

24. The statements were malicious, as evidenced by the Trump Entities' prior threat of "bad publicity" against Plaintiffs, and were made with knowledge of their falsity or, alternatively, were made so recklessly as to amount to a willful disregard of the truth.

25. Jason Greenblatt and the Trump Entities, through Jason Greenblatt as their agent, made these statements regarding Plaintiffs' fitness to perform the duties of their profession and their credibility, integrity, and truthfulness, with the purpose and intent, as evidenced by the Trump Entities' prior threat of bad publicity against Plaintiffs, of injuring Plaintiffs' reputations.

## COUNT I
## BREACH OF CONTRACT
(Cook, Heyward Against the Trump Entities)

26. Plaintiffs incorporate and rely upon the allegations in the foregoing paragraphs 1 through 25 as if same were restated fully herein.

27. The Trump Entities agreed to pay Cook, Heyward for representation and legal services rendered.

28. The Trump Entities have failed to pay Cook, Heyward's invoices for any work performed or any costs advanced whatsoever and have thereby breached that Agreement.

29. As a direct result of the Trump Entities' breach of contract, Cook, Heyward has suffered damage and incurred loss including, but not limited to, all fees earned and costs

advanced in connection with Cook, Heyward's representation of the Trump Entities in the Declaratory Judgment action, and other incidental and out-of-pocket expenses.

## COUNT II
## QUANTUM MERUIT

(Cook, Heyward Against the Trump Entities)

30. In the alternative, Plaintiffs incorporate and rely upon the allegations in the foregoing paragraphs 1 through 29 as if same were restated fully herein, but excluding those allegations that an enforceable oral contract existed between the Trump Entities and the Firm.

31. In the alternative, to the extent no enforceable contract exists between Cook, Heyward and the Trump Entities, by representing them in the Declaratory Judgment action and performing the aforementioned legal services, Cook, Heyward conferred a benefit on the Trump Entities.

32. The Trump Entities were aware that this benefit was conferred on them by Cook, Heyward.

33. The Trump Entities accepted the benefit conferred.

34. As Cook, Heyward expended effort and incurred costs while conferring this benefit on the Trump Entities, it is inequitable for the Trump Entities to retain the benefit without paying for its value.

35. As a direct result of conferring the benefit of its representation and legal services on the Trump Entities, and of their acceptance thereof, Cook, Heyward has suffered damage and incurred loss including, but not limited to, all fees earned and costs advanced in connection with Cook, Heyward's representation of the Trump Entities in the Declaratory Judgment action, and other incidental and out-of-pocket expenses.

## COUNT III
## DEFAMATION *PER SE*

(Cook, Heyward and David D. Hopper Against the Trump Entities and Jason Greenblatt)

36. Plaintiffs incorporate and rely upon the allegations in the foregoing paragraphs 1 through 35 as if same were restated fully herein.

37. Jason Greenblatt, individually and as agent of the Trump Entities, published false factual statements concerning Plaintiffs on December 2, 2011, which statements were republished on December 2, 2011 and again on December 5, 2011.

38. The statements are defamatory *per se*, prejudice Plaintiffs in their profession, the practice of law, and further, taken in context, imply that Plaintiffs are unfit to perform the duties of their profession and that they lack credibility, integrity, and truthfulness.

39. The statements were malicious, and were made with knowledge of their falsity or, alternatively, made so recklessly as to amount to a willful disregard of the truth.

40. Jason Greenblatt, individually and as agent for the Trump Entities, made these statements regarding Plaintiffs' fitness to perform the duties of their profession and their credibility, integrity, and truthfulness with the purpose and intent of injuring Plaintiffs' reputations.

41. As a direct and proximate result of said defamation *per se* and/or defamation, Plaintiffs have suffered, continue to suffer, and will in the future suffer damages, including humiliation, distress, embarrassment, inconvenience, damage to reputation, loss of income, loss of business and economic opportunities, and other injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Cook, Heyward, Lee, Hopper & Feehan, P.C. and David D. Hopper move this Court for judgment in their favor, and further request that this Court:

(a) Enter judgment against the Trump Entities on Count I (Breach of Contract), or alternatively on Count II (Quantum Meruit), and award Cook, Heyward its fees earned and costs advanced in its representation of TVA and TVE in the Declaratory Judgment action (Civil Action No. 3:11-cv-00053) filed in the United States District Court for the Western District of Virginia, Charlottesville Division, in the amount of $94,511.35;

(b) Enter judgment against the Trump Entities and Jason Greenblatt, jointly and severally, on Count III (Defamation) and award Cook, Heyward $1,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages;

(c) Enter judgment against the Trump Entities and Jason Greenblatt, jointly and severally, on Count III (Defamation) and award David D. Hopper $1,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages; and

(d) Award Plaintiffs such other relief as may be just and proper.

Respectfully submitted,

COOK, HEYWARD, LEE, HOPPER & FEEHAN, P.C., and DAVID D. HOPPER

By: _____

Harris D. Butler, III (VSB No. 26483)
Rebecca H. Royals (VSB No. 71420)
BUTLER ROYALS, PLC
100 Shockoe Slip, 4th Floor
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 648-6814