### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| COOK, HEYWARD, LEE, HOPPER & FEEHAN, ) <br> P.C., a Virginia Professional Corporation, and ) <br> DAVID D. HOPPER, individually, ) <br> ) <br>         Plaintiffs, ) <br>   v. ) <br> ) <br> TRUMP VIRGINIA ACQUISITIONS, LLC, ) <br> TRUMP VINEYARD ESTATES LLC, THE ) <br> TRUMP ORGANIZATION, INC., and ) <br> JASON GREENBLATT, individually, ) <br> ) <br>         Defendants. ) | Civil Action No. 3:12-CV-0131 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR RULE 12(B)(6) MOTION TO DISMISS COUNT III
## ("DEFAMATION *PER SE*") OF PLAINTIFFS' COMPLAINT

James M. Bowling IV (VSB #14232)
ST. JOHN, BOWLING, LAWRENCE & QUAGLIANA, LLP
416 Park Street
Charlottesville, VA 22901
T: (434) 296-7138
F: (434) 296-1301
*jmb@stlawva.com*

Stephen Novack
John F. Shonkwiler
Shelby L. Drury
(*pro hac vice* applications pending)
NOVACK AND MACEY LLP
100 North Riverside Plaza
Chicago, IL 60606
T: (312) 419-6900
F: (312) 419-6928
*snovack@novackmacey.com*

Doc. #492018

## TABLE OF CONTENTS

I.      SUMMARY ................................................................................................... 1

II.     RELEVANT FACTUAL ALLEGATIONS ................................................... 2

      A.     The Western District Litigation ............................................................ 2

      B.     The Fee Dispute ..................................................................................... 3

      C.     The VLW Blog ...................................................................................... 3

      D.     Plaintiffs' Complaint Herein ................................................................. 4

III.    ARGUMENT ................................................................................................. 4

      A.     Rule 12(b)(6) Standard .......................................................................... 4

      B.     Count III Fails To State A Claim For Defamation ................................. 5

             1.     The Alleged Statements Are Protected Opinions ...................... 7

                   a.     Non-Actionable Opinion.................................................. 9

                   b.     Additional Reasons Why The
                           Word "Shoddy" Is Not Actionable ............................... 14

             2.     The Alleged Statements Are Not Defamatory ......................... 16

                   a.     The Statements Are Not Defamatory............................. 16

                     b.     The Analysis Does Not Change Just
                           Because Plaintiffs Allege Defamation *Per Se* ............................. 20

             3.     In All Events, The Alleged  Statements
                 Do Not Constitute Defamation *Per Se*.................................................... 21

IV.    CONCLUSION............................................................................................. 24

Defendants Trump Virginia Acquisitions, LLC ("Trump Acquisitions"), Trump Vineyard Estates, LLC ("Trump Vineyard"), The Trump Organization, Inc. and Jason Greenblatt ("Greenblatt") (collectively, "Defendants"), by their attorneys, submit this memorandum in support of their Rule 12(b)(6) motion (the "Motion") to dismiss Plaintiffs' "defamation *per se*" claim alleged as Count III of the Complaint.

## I.   <u>SUMMARY</u>

This case is about an attorney-client relationship that fell apart over a fee dispute.  As Plaintiffs articulated it in their motion requesting leave to withdraw as Defendants' counsel, the relationship between the parties became "adversarial."  Defendants felt that Plaintiffs' fees were significantly higher than they should have been and not justified by the services provided, and did not want to pay the full amount.  Plaintiffs felt the opposite and wanted payment in full. When the parties were not able to agree on a reduced fee, Plaintiffs withdrew as counsel and the relationship terminated.

Plaintiffs filed this action to resolve the parties' fee dispute and to recover whatever amount is due.  No problem with that.  But, Plaintiffs should have stopped there.

Instead, this simple fee dispute has been transformed by labored allegations of defamation and a "$4,000,000" prayer for relief, all based on a local blog column that picked up the story about the parties' failed relationship.  Yet, Defendants' alleged comment that they were "disappointed" with Plaintiffs' work -- and "needed to redo" it -- is classic non-actionable opinion, and nothing more than a response to <u>Plaintiff's</u> comments (reported in the same column) that Defendants "stiffed" Plaintiffs on the bills.  As the Virginia Supreme Court and federal district courts in Virginia applying Virginia law have recognized, when a business relationship breaks up as this one did, parties are allowed to air their views without being liable for

defamation -- even if their opinions are unflattering or offensive -- and readers understand that such statements are expressions of opinion.  As such, they are constitutionally protected and <u>not</u> actionable.

In reality, this is a fee dispute, not a defamation case.  Because Plaintiffs have unnecessarily complicated the matter with a meritless defamation claim, Defendants bring this Motion.  For the reasons that follow, the Court should dismiss Count III with prejudice and allow the parties to get on with resolving their fee dispute.

## II.   RELEVANT FACTUAL ALLEGATIONS[1]

### A.   The Western District Litigation

Plaintiff Cook, Heyward, Lee, Hopper & Feehan, P.C. is a law firm in Glen Allen, Virginia, and Plaintiff David D. Hopper is an attorney with the firm.  (Compl. ¶¶2, 3, 10, 11.) Defendants Trump Acquisitions and Trump Vineyard (the "Western District Defendants") hired Plaintiffs to represent them as litigation counsel in a declaratory judgment action filed in the United States District Court for the Western District of Virginia, Civil Action No. 3:11-cv-00053 (the "Western District Litigation").  (<u>Id.</u> ¶¶9-11.)

Plaintiffs appeared on the Western District Defendants' behalf and filed a motion to dismiss on September 19, 2011.  (Western District Litigation docket, CM/ECF Nos. 5, 6.)[2]  The motion to dismiss was denied.  (<u>Id.</u>, Nos. 20, 21.)  Plaintiffs thereafter continued to represent the

---

[1]     Pursuant to Rule 12(b)(6), the alleged facts recited herein are assumed true only for purposes of Defendants' Motion.  For all other purposes, Defendants reserve the right to dispute any and all allegations including, without limitation, whether the alleged defamatory comments were ever made by Defendants and, if so, whether they were false and whether they can be attributed to one or more of the corporate Defendants.

[2]     All cites to "CM/ECF No. __" cite to CM/ECF docket entries in the Western District Litigation.  The Court can take judicial notice of the docket and the filings of record, and can consider them in ruling on this Motion under Rule 12(b)(6).  <u>See</u> <u>PBM Nutritionals, LLC v. Dornoch Ltd</u>, 667 F. Supp. 2d 621, 626 (E.D. Va. 2009).

Western District Defendants in the Litigation until, on December 2, 2011, they filed a motion to withdraw as counsel (the "Motion to Withdraw").  (Id., No. 27.)  The Motion to Withdraw was granted on December 15, 2011, ending the representation.  (Id., No. 37.)

One week later, new counsel filed their appearance.  (Id., No. 40.)  The Western District Litigation is still in progress.  (See generally id.)

**B.      The Fee Dispute**

Plaintiffs sent monthly invoices for fees and costs in the total amount of $94,511.35. (Compl. ¶12.)  A representative of the Western District Defendants told Plaintiffs that the invoiced amount was "too high" and asked for an adjustment.  (Id. ¶16.)  Plaintiffs declined and, instead, filed the Motion to Withdraw.  (Id.)

The Motion to Withdraw alleged, among other things:

> In this case, Defendants Trump Virginia Acquisitions LLC and Trump Vineyard Estates LLC (collectively, "Trump") have failed to meet their financial obligations to Hopper, Heyward and the Firm and it would work a substantial hardship upon Hopper, Heyward and the Firm to require them to continue to represent Trump without being paid.  Furthermore, Trump has asserted an adversarial position toward the Firm that would render any continued attorney-client relationship unreasonably difficult.

(CM/ECF No. 27.)

**C.      The VLW Blog**

The Motion to Withdraw caught the attention of the "VLW Blog," which is published on Virginia Lawyers Weekly's website (valawyersweekly.com).   The blog ran a column (the "Blog") that was entitled **"Trump not paying legal bills, lawyers say,"** which began:

> Two Richmond-area lawyers [Hopper and his partner Heyward] say their firm is getting stiffed by Donald Trump and they want out of a lawsuit in Charlottesville federal court. A Trump spokesperson blames the dispute on shoddy work by the Virginia lawyers.

The column went on describing the dispute as follows:

3

> Two Trump-owned entities -- defendants in the case -- have "failed
> to meet their financial obligations" to the lawyers and the firm,
> wrote David D. Hopper in a motion filed Friday.  It would work a
> hardship on the lawyers and the firm to require them to continue to
> represent Trump "without being paid," Hopper said.
>
> Hopper added that Trump has "asserted an adversarial position"
> toward the firm that would make a continued relationship
> "unreasonably difficult."
>
>           *       *       *
>
> Trump general counsel Jason Greenblatt acknowledged the dispute
> with Cook, Heyward.  "We were very, very disappointed over their
> work quality and their billing practices," he said.  "We needed to
> redo their work multiple times in-house."

(Compl. ¶18.)  The Blog was republished, verbatim, three days later in Richmond BizSense's

News Feed online, via a link to the VLW Blog page.  See www.richmondbizsense.com/2011/12/

05/newsfeeds-12-5-11. (See also Compl. ¶20.)

### D.   Plaintiffs' Complaint Herein

On February 17, 2012, Plaintiffs filed this three-count lawsuit, alleging:  Count I, for

breach of an oral fee agreement; Count II, in the alternative, for recovery of fees and costs under

a *quantum meruit* theory; and Count III, for defamation *per se*.  Count III is based solely on the

language in the above indented quote from the Blog.  This Count should be dismissed.

## III.   ARGUMENT

### A.   Rule 12(b)(6) Standard

Rule 12(b)(6) requires dismissal of a Complaint where a plaintiff cannot obtain the relief

it seeks even if all "well-pled" factual allegations are accepted as true and the "reasonable

inferences" derived therefrom are viewed in the light most favorable to plaintiff.  Nemet

Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253, 255 (4th Cir. 2009).  "[L]egal

conclusions, [recitation of the] elements of a cause of action, and bare assertions devoid of

further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Nemet, 591 F.3d at 255 (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)). Indeed, in evaluating a Rule 12(b)(6) motion, courts must "decline to consider 'unwarranted inferences, unreasonable conclusions, or arguments'" contained in the complaint. Nemet, 591 F.3d at 255 (citations omitted); see also Iqbal, 129 S.Ct. at 1951-52.

In addition to allegations on the face of the Complaint, the Court must also consider the Blog itself. (The Richmond BizSense News Feed publication will not be discussed separately because it is identical to the VLW Blog.) A hard copy of the Blog printed from the Virginia Lawyers Weekly's website (valawyersweekly.com) is attached hereto as Exhibit A. Although Plaintiffs chose not to attach the Blog to the Complaint, they cannot run from it, because it is central to their claim (Compl. ¶¶18-21) and, thus, is considered part of the pleadings for Rule 12(b)(6). Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (court may consider documents that are "integral to and explicitly relied on [or referred to] in the complaint") cited in Whitaker v. Wells Fargo Advisors, LLC, No. 3:11CV380-HEH, 2011 WL 4565430, at *3 (E.D. Va. Sept. 29, 2011) (Hudson, J.). The actual text of the Blog is controlling over any alleged facts, characterizations or conclusions inconsistent therewith. See Am. Chiropractic Ass'n, 367 F.3d at 234 (document attached to motion to dismiss negated complaint's allegations of justifiable reliance).

### B.   Count III Fails To State A Claim For Defamation

The alleged statements in the Blog on which Plaintiffs base their claim are the following (in the order in which they appear in the Blog). First, the blogger's own unquoted sentence that reads: "A Trump spokesperson blames the dispute on shoddy work by the Virginia lawyers." Second, is the quoted language that Greenblatt allegedly stated: "We were very, very, disappointed over their work quality and their billing practices." Third, is the quoted language

5

that Greenblatt allegedly stated:   "We needed to redo their work multiple times in-house."

Collectively, we will refer to all three as the "Alleged Statements" or the "Statements."

Virginia law applies to Plaintiffs' defamation claim in this diversity action because

Plaintiffs allege that the Statements were published in Virginia.   PBM Prods., LLC v. Mead

Johnson Nutrition Co., 678 F. Supp. 2d 390, 398 (E.D. Va. 2009).   To state a claim for

defamation under Virginia law, "a plaintiff must allege that the defendant (1) published (2) an

actionable statement with (3) the requisite intent."   Whitaker, 2011 WL 4565430, at *3 (E.D.

Va.) (applying Virginia law); [3] accord Jordan v. Kollman, 612 S.E.2d 203, 206 (Va. 2005).   The

second element is particularly appropriate for consideration on a Rule 12(b)(6) motion because

"'[w]hether a statement is actionable is a matter of law to be determined by the court.'"   Hanks v.

Wavy Broad., LLC, No. 2:11cv439, 2012 WL 405065, at *6 (E.D. Va. Feb. 8, 2012) (citations

omitted); see also Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985).

To be actionable, a statement must, among other things:  (1) not be a protected expression

of opinion and (2) be defamatory.   Hanks, 2012 WL 405065, at *14 (E.D. Va.); Marroquin v.

Exxon Mobil Corp., No. 08-391, 2009 WL 1529455, at *8 (E.D. Va. May 27, 2009).   Further, to

be actionable as defamation per se, the statement must meet one or more of four additional tests.

Yeagle v. Collegiate Times, 497 S.E.2d 136, 138 n. 2 (Va. 1998).   Here, Count III fails in all

three of these separate (albeit somewhat related) respects because the Alleged Statements are:

(1) non-actionable opinion; (2) not defamatory; and (3) even if they were both factual and

---

[3]      Each of the federal cases cited herein for substantive points of state defamation
law apply Virginia law.

defamatory, they would still not constitute defamation *per se*.  All three reasons -- <u>any</u> <u>one</u> of which is <u>dispositive</u> -- will now be discussed in turn. [4]

### 1.    The Alleged Statements Are Protected Opinions

While defamation claims are based on state common law, they are also "subject to principles of freedom of speech arising under the First Amendment to the [Federal] Constitution and Article 1, Section 12 of the Constitution of Virginia."  <u>Yeagle</u>, 497 S.E.2d at 137.  "The United States Supreme Court has identified constitutional limits on the type of speech that may be the subject of common law defamation actions[:] speech which does not contain a provably false <u>factual</u> connotation, or statements which cannot be reasonably interpreted as stating <u>actual</u> <u>facts</u> about a person <u>cannot</u> form the basis of a common law defamation action."  <u>Id.</u> (emphasis added); <u>accord</u> <u>Gibson v. Boy Scouts of Am.</u>, 360 F. Supp. 2d 776, 781 (E.D. Va. 2005), <u>aff'd</u>, 163 Fed. Appx. 206 (4th Cir. 2006) (unpublished).

Thus, a statement that cannot be "objectively characterized as true or false" is non-actionable opinion.  <u>Jordan</u>, 612 S.E.2d at 206; <u>Spencer v. Am. Int'l Group, Inc.</u>, No. 3:08CV00591, 2009 WL 47111, at *7 (E.D. Va. Jan. 6, 2009).  Moreover, even a statement that <u>is</u> objectively verifiable may still be a protected opinion "if it can best be understood from its language and context to represent the <u>personal</u> <u>view</u> of the author or speaker who made it."  <u>Potomac Valve & Fitting Inc. v. Crawford Fitting Co.</u>, 829 F.2d 1280, 1288 (4th Cir. 1987) (emphasis added); <u>accord</u> <u>Hanks</u>, 2012 WL 405065, at *9 (E.D. Va.); <u>Cutaia v. Radius Eng'g Int'l, Inc.</u>, No. 5:11cv000077, 2012 WL 525471, at *8 (W.D. Va. Feb. 16, 2012).  In addition,

---

[4]    A statement must also be false to be actionable.  <u>Chapin v. Knight-Ridder, Inc.</u>, 993 F.2d 1087, 1092 (4th Cir. 1993).  Whether a statement is true or false is a question of fact and is generally not appropriate for disposition on a Rule 12(b)(6) motion.  <u>Id.</u>  Thus, this requirement will not be addressed here, but Defendants reserve the right to raise it (and other defects) at any appropriate time.

language that is "insulting, offensive, or otherwise inappropriate" still constitutes no more than non-actionable "rhetorical hyperbole" where the statements cannot "reasonably be understood to convey a false representation of fact."   <u>Yeagle</u>, 497 S.E.2d at 137.   Consistent therewith, statements that are "relative in nature and depend largely upon the speaker's viewpoint" are protected expressions of opinion.  <u>Jordan</u>, 612 S.E.2d at 206; <u>accord</u> <u>Chaves</u>, 335 S.E.2d at 101. <u>See</u>, <u>e.g.</u>, <u>Spencer</u>, 2009 WL 47111, at *7 (E.D. Va.) (a statement based on "the exercise of discretion and individualized judgment" that "depend[s] largely on [the speaker's] own perspective" cannot be "objectively characterized as true or false," as such it is a protected expression of opinion).

"Whether a statement is an actionable statement of fact or non-actionable opinion is a matter of <u>law</u> to be determined by the <u>court</u>."  <u>Jordan</u>, 612 S.E.2d at 206-07 (emphasis added). In doing so, a court may look at, among other things, the "statement's language," "the context" and the "general tenor of the article."  <u>Biospherics, Inc. v. Forbes, Inc.</u>, 151 F.3d 180, 184 (4th Cir. 1998) <u>cited</u> <u>in</u> <u>PBM Prods</u>, 678 F. Supp. 2d at 401 (noting that "court may look to whether the challenged statement can be objectively characterized as true or false, the author or speaker's choice of words; the context of the challenged statement within the writing or speech as a whole; and the broader social context into which the statement fits."); <u>accord</u> <u>Hanks</u>, 2012 WL 405065, at *9 (E.D. Va.).

Applying this standard here, the Alleged Statements are non-actionable opinion and/or hyperbole.  This is so even when the Statements are viewed alone.  It is particularly so when they are viewed in the context of the entire Blog and in the context of the commercial dispute in which they were allegedly made.

### a.    <u>Non-Actionable Opinion</u>

When commercial relationships deteriorate, as the parties' relationship did here, the principals often part ways unhappy, with unflattering views of each other.  As the Eastern District of Virginia recently recognized, a "review of Virginia case law demonstrates that Virginia courts have held that characterizations of a business's performance or a professional's character are generally considered to be expressions of opinion and are thus protected speech." <u>Hanks</u>, 2012 WL 405065, at *10 (E.D. Va.) (citing numerous federal and Virginia cases). Likewise, the Western District of Virginia recently observed that when disappointed customers air their criticisms in a commercial context courts recognize those criticisms for what they are -- opinions.  <u>Cutaia</u>, 2012 WL 525471, at *8 (W.D. Va.).

Here, Defendants allegedly responded to a charge that they had "failed" to pay their legal bills and "stiffed" Plaintiffs by expressing their "disappointment" with Plaintiffs' professional services and fees and their belief that they "needed to redo" Plaintiffs' work.  These Alleged Statements -- particularly when viewed in the context of the parties' bitter fee dispute -- can only be understood as expressions of <u>opinions</u> concerning the quality and value of Plaintiffs' services. They are comments that are "relative in nature" and expressions of the "speaker's viewpoint" and, therefore, <u>not</u> actionable.  <u>See</u>, <u>e.g.</u>, <u>Jordan</u>, <u>Chaves</u>, <u>Potomac Valve</u> and <u>Cutaia</u>, <u>supra</u>.

<u>Cutaia</u> is on point.  In that case, the plaintiff customer hired the defendant contractor to build an underground shelter, but the parties had some disagreements and the relationship broke up before the contractor finished the shelter.  <u>Cutaia</u>, 2012 WL 525471, at *1 (W.D. Va.).  The customer approached one of the contractor's competitors seeking help with the project and allegedly stated that he paid "a lot of money" for the contractor's services; that the contractor was "incompetent"; and that various systems it had installed "[did] not work."  <u>Id.</u>  After the customer sued the contractor for breach of contract, the contractor filed a counterclaim alleging

9

that the customer's statements were defamatory.  Id.  The customer moved to dismiss the counterclaim and the court granted the motion, holding that the alleged statements, although "offensive and unpleasant" from the contractor's perspective, were nevertheless statements of opinion, "wholly dependent on [the speaker's] viewpoint and not subject to objective verification." Id. at *7 (emphasis added).

Cutaia is particularly instructive because of the depth of its analysis of Virginia cases arising out of similar adversarial or broken commercial/professional relationships.  See id. at *4-8.  Notably, after performing a thorough review of allegedly defamatory statements made in those contexts, the court observed that such statements:

> . . . are a natural part of commercial interactions.  Thus, even if these types of statements can be verified as true or false, a reasonable interpretation of the statements within the commercial context in which they are offered indicates that they are merely expressions of opinion of an upset consumer lacking the necessary defamatory sting to make them actionable under Virginia law.  Id. at *8.

The Fourth Circuit reached a similar conclusion in Potomac Valve, 829 F.2d at 1290, holding that the defendant's statement that the competitor's product test was "designed to snow the customer," even if verifiable, was protected speech when viewed in context, because:

> The world of business is a world of conflict and competition.  Businessmen recognize this, and are usually able to discount the views of one competitor about the quality of his rival's product, or the purity of his ethical character.

Indeed, the Virginia Supreme Court -- and federal district courts in Virginia applying Virginia law -- have routinely rejected defamation claims based on alleged critical or disparaging comments made by a client, employer or competitor, on the ground that they were, as a matter of law, non-actionable statements of opinion.  For example:

> • The Virginia Supreme Court held that a business competitor's "charge of inexperience is in its nature a

relative statement, depending for its import largely upon the speaker's viewpoint. . .  The relative nature of such opinion[] is obvious to anyone who hears [it]."  <u>Chaves</u>, 335 S.E.2d at 101 (emphasis added).

- "A charge that [architect's] <u>professional fees are excessive</u> is largely dependent upon the speaker's viewpoint" and thus is protected opinion.  <u>Id.</u> (emphasis added).

- "An allegation of <u>incompetence</u> is not speech that contains a provably false factual connotation."  <u>See</u> <u>Katti v. Moore</u>, No. 3:06cv471, 2006 WL 3424253, at *4 (E.D. Va. Nov. 22, 2006) (emphasis added) (dismissing university teacher's claim against former employer).

- Former employer's statement that terminated executive "failed to meet any reasonable measure of satisfactory performance" was non-actionable opinion.  <u>Hockycko v. Entrodyne Corp.</u>, No. 6:05cv00025, 2005 WL 3132320, at *6 (W.D. Va. Nov. 22, 2005).

- Statements that plaintiff executive was terminated because he did something "very bad," "inappropriate" and "created an improper commitment with a customer" are "expressions of opinion that rest on each speaker's perspective."  <u>Marroquin</u>, 2009 WL 1529455, at *9 (E.D. Va.).

<u>Hockycko</u>, 2005 WL 3132320, at *6 (W.D. Va.), also is instructive.  There, the court held that an employer's statement that the plaintiff, a terminated executive, "'failed to meet any reasonable measure of satisfactory performance'" and "'was a negative influence in recent months'" was non-actionable opinion.  The court held that the statements were akin to non-actionable statements of unsatisfactory job performance.  <u>Id.</u>  The court also held that whether the plaintiff was a "negative influence" is a "relative concept, depending on the speaker's viewpoint, and thus further qualifies as opinion."  <u>Id.</u>  Finally, the court found that the employer's statements regarding the plaintiff's unwillingness to become more involved with the company were relative and dependent on the speaker's viewpoint.  <u>Id.</u>

11

As noted above, when courts distinguish fact from protected opinion, context is essential. In that regard, the court examines how an objective reasonable reader would understand a challenged statement by focusing on the statement's plain language and the context and general tenor of the article.  Biospherics, 151 F.3d at 184; see also Hanks, 2012 WL 405065 at *9 (E.D. Va.).  For example, in Biospherics, 151 F.3d at 186, the court held that the plaintiff failed to state a defamation claim because, among other things, "any reasonable person" reading the article criticizing the plaintiff-corporation's product and performance and recommending the selling of the corporation's stock "would recognize based on the tenor, language, and context of the article, that the challenged statements constitute a subjective view, not a factual statement."

The foregoing cases confirm that the Alleged Statements here are non-actionable expressions of opinion.  They clearly are "relative statements" about the perceived quality and value of Plaintiff's work that are subjective and "dependent on the speaker's viewpoint" and, therefore, a statement of protected opinion.  See Chaves, 335 S.E.2d at 101; Cutaia, 2012 WL 525471, at *7 (W.D. Va.).

Indeed, the Statements are similar to the employer's non-actionable opinion that a former executive "failed to meet any reasonable measure of satisfactory performance."  See Hockycko, 2005 WL 3132320, at *6 (W.D. Va.); see also Cutaia, 2012 WL 525471, at *7 (W.D. Va.) (statement that contractor "did not properly perform its contractual duties" was opinion).  They cannot reasonably be understood as asserting any objectively verifiable facts about Plaintiffs.  In fact, the Alleged Statement that Defendants were "disappointed over [Plaintiffs'] work quality" and the Blog's' use of the word "shoddy" are far more subjective than other statements courts have held to be non-actionable opinion, such as statements that a plaintiff is "incompetent,"

12

"inexperienced," "failed" or did something "very bad" and "inappropriate."  See Katti, Chaves,

Hockycko, Marroquin, respectively, supra.

The alleged Statement that Defendants "needed to redo" the work is similarly subjective,

and particularly so given that the alleged comment refers to litigation work product, the

perceived value and quality of which is, by its nature, largely subjective.  See Spencer, 2009 WL

47111, at *7 (E.D. Va.) (assessment that "requires the exercise of discretion and individualized

judgment" and "depend[s] largely on [the speaker's] perspective" is opinion).  Likewise, the fact

that the Statements allegedly included a complaint about "billing practices" makes it just like the

statement that "professional fees are excessive," which the Virginia Supreme Court held in

Chaves, 335 S.E.2d at 101, was dependent on the speaker's viewpoint and thus protected

opinion.

That the Statements are protected expressions of opinion becomes even more apparent

when they are examined in light of the context and tenor of the publication in which they

appeared.  See Biospherics, 151 F.3d at 186.  The Blog's headline -- "Trump not paying legal

bills, lawyers say" -- lets the reader know that the Blog is reporting on attorney-client

relationship that has turned sour over a fee dispute, that the main allegations are coming from the

lawyers and that the article is all about Trump.  The opening paragraph adds color to the writer's

summary of the dispute, reporting Plaintiffs' position that they were "stiffed" by Trump, and

characterizing Defendants' retort as meaning that they were being overbilled for "shoddy" work.

Then, the column addresses the provocative allegations of Plaintiffs' Motion to Withdraw

concerning the Western District Defendants' alleged "failure to meet financial obligations" and

Plaintiffs' alleged inability to get "paid" for their work.  The Statements attributed to Greenblatt

are immediately preceded by the comment "Trump general counsel Jason Greenblatt

acknowledged the dispute with Cook, Heyward." Thus, the Alleged Statements are presented by the Blog writer as Defendants' response to the allegations in the Motion to Withdraw.

In this context, any reasonable person reading the Blog would recognize that the parties were simply stating their <u>subjective</u> views concerning the fee dispute that prompted the parties' break-up. Or, as the district court stated in <u>Cutaia</u>, a reader of the Blog would recognize the alleged expressions of dissatisfaction with Plaintiffs' work product and billing practices as the "non-actionable frustrations of a dissatisfied customer expressing his opinion." <u>Cutaia</u>, 2012 WL 525471, *8 (W.D. Va.). Thus, even if the Alleged Statements <u>could</u> be verified as true or false (they cannot be), in context they are nothing more than a dissatisfied customer's constitutionally protected expressions of opinion.

In all events, although it is clear from the words themselves and the context in which they were published that the Alleged Statements are <u>opinions</u>, any possible doubt is resolved by considering the nature of the proof that Plaintiffs would need to put on at trial to prove that the Statements were false. Plaintiffs would have the burden of proving at trial that their work was: (1) of a certain quality; (2) did not require re-drafting; and (3) justified the fees billed. Obviously, Plaintiffs could not begin to prove any of the above without using one or more expert witnesses to offer <u>opinions</u> concerning the quality of Plaintiffs' work and the reasonableness of their fees. This says it all. The allegedly defamatory Statements here are statements of <u>opinions</u> that cannot be objectively proven true or false.

**b.    Additional Reasons Why The<br>Word "Shoddy" Is Not Actionable**

In addition to being non-actionable opinion (for the reasons explained above), the word "shoddy" also is incapable of supporting a defamation claim for two other reasons: (1) it is rhetorical hyperbole and (2) it is not a quote and is not expressly attributed to Defendants.

14

<u>First</u>, the word "shoddy" is a clear example of "rhetorical hyperbole" that is not actionable because it cannot be reasonably understood to convey a false and objectively verifiable fact.  <u>See</u>, <u>e.g.</u>, <u>Yeagle</u>, 497 S.E.2d at 137 (affirming dismissal of defamation claim because article referring to plaintiff as "Director of Butt Licking" was "no more than 'rhetorical hyperbole'"; and citing other examples, including "referring to the negotiating position of a real estate developer as 'blackmail'" or "defining a labor union 'scab' to be a 'traitor'") (citations omitted).

<u>Second</u>, "shoddy" is the <u>blogger's own</u> word.  It is not the quote of a statement by any Defendant.  Plaintiffs allege (erroneously) that Greenblatt "characterized Plaintiffs' work as 'shoddy'." (Compl. ¶18.)  Yet, the actual content of the Blog -- which overrides any inconsistent allegations in the Complaint (see <u>Am. Chiropractic Ass'n</u>, 367 F.3d at 234, <u>supra</u>) -- does not support this allegation.  The Blog does not attribute the word "shoddy" to Greenblatt, or to anyone for that matter.  As noted above, "shoddy" appears only in the very first paragraph of the Blog, which obviously provides the <u>blogger's own</u> sensationalized description of the reported story that is about to follow.  Thus, it is apparent from the context that "shoddy" was a word chosen by the <u>blogger</u> to characterize the alleged statements from Greenblatt that he purported to quote later in the column.  Thus, this Statement cannot serve as a basis for any claim against <u>Defendants</u>.

\*     \*     \*

In sum, because the Alleged Statements are protected expressions of opinion and/or hyperbole, they are not actionable.  For this reason alone, the Court should dismiss Count III. Additionally, the Alleged Statements are not defamatory, which also mandates dismissal.  It is to that point that this memorandum now turns.

### 2.   The Alleged Statements Are Not Defamatory

This Section will demonstrate that:  (a) the Alleged Statements are not defamatory; and (b) the analysis does not change just because Plaintiffs allege defamation *per se*.

### a.   The Statements Are Not Defamatory

In addition to being non-actionable opinion, the Alleged Statements do not qualify for a defamation claim for another, most basic reason -- they are not defamatory.  This would hold true even if the Statements were read alone.  It is particularly so in the context of the entire Blog and the commercial dispute in which Defendants and Plaintiffs are engaged.  See Cutaia, 2012 WL 525471, at *8 (W.D. Va.), supra ("statements made by customers regarding their satisfaction with a certain product or service . . . lack[] the necessary defamatory sting to make them actionable."); accord Chaves, 335 S.E.2d at 101 (statements "grounded upon the speaker's obvious bias . . . hav[e] no tendency to defame.").

This is significant because to be actionable under Virginia law, a statement must not only be an objectively verifiable statement of fact, it must also be defamatory.  Hanks, 2012 WL 405065, at *14 (E.D. Va.); Jordan, 612 S.E.2d at 206.  "'Merely offensive or unpleasant'" statements are not defamatory.  Marroquin, 2009 WL 1529455, at *8 (E.D. Va.) (citing Chapin, 993 F.2d at 1092).  Rather, a defamatory statement "must 'tend[] so to harm the [plaintiff's] reputation [so] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"  Whitaker, 2011 WL 4565430, at *3 (E.D. Va.), accord Marroquin, 2009 WL 1529455, at *8 (E.D. Va.).  Moreover, a defamatory statement must make the plaintiff "'appear odious, infamous, or ridiculous,'" or, as some courts have put it, to be actionable "a statement must contain a defamatory 'sting.'"  Cutaia, 2012 WL 525471, at *3 (W.D. Va.) (citing Chapin, 993 F.2d at 1092).

16

To determine if a statement is defamatory, Virginia law requires the alleged defamatory words to be taken in their plain meaning and in the context in which the community would understand them.  Hanks, 2012 WL 405065, at *10 (E.D. Va.).  "While 'every fair inference' in a pleading may be used to determine whether the words complained of are capable of a meaning ascribed by innuendo, inferences cannot extend the statements, by innuendo, beyond what would be the ordinary and common acceptance of the statement."  Yeagle, 497 S.E.2d at 138; accord Hanks, 2012 WL 405065, at *10 (E.D. Va.).  The issue of whether a statement is defamatory is a question of law and, thus, appropriate for disposition under Rule 12(b)(6).  E.g., Hanks, 2012 WL 405065, at *14 (E.D. Va.); Whitaker, 2011 WL 4565430, at *3 (E.D. Va.).

Spencer is particularly instructive.  Like here, that case concerned allegedly defamatory comments made by former clients about their attorney.  It began when the former clients (by and through a new lawyer) sued their former lawyer for malpractice for missing a filing deadline that resulted in dismissal of the client's appeal.  The new lawyer made certain statements about the allegations in the malpractice case to a reporter, which were published in a newspaper.  The former lawyer sued the new lawyer and his former clients for defamation.  Spencer, 2009 WL 47111, at *3 (E.D. Va.).  The court held that the statements could not support a defamation claim because, among other things, they were not "defamatory in nature."  Id. at *9.

In particular, the court held that "a statement placing the blame on an attorney for a mistake" does not make him appear "'odious, infamous, or ridiculous'", id. "[n]or does it assail his reputation to such a degree to 'lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"  Id. at *6.  Additionally, the court rejected the plaintiff's attempts to "impermissibly extend the meaning of the *actual* statements" beyond their ordinary meaning.  Id. at *8-9 (emphasis in original) (holding, for example, that the fact that the

new lawyer said he did not have enough information to sue the former lawyer's co-counsel for malpractice did not imply that the former lawyer was entirely responsible).

Spencer (id. at *6) relied on the Virginia Supreme Court's decision in Perk v. Vector Res. Group, Ltd., 485 S.E.2d 140 (Va. 1997). In Perk, an attorney was hired to collect delinquent accounts for a client (a hospital). Perk, 485 S.E.2d at 143-44. The attorney later sued a law firm for defamation because it told some of the hospital's account debtors that he did not report certain of their payments to the hospital. Like in Spencer, the court held that a "defamatory charge [could not] be inferred from the statements." Id. To do so, "would extend the meaning of the words used beyond their ordinary and common acceptance." Id.

Cases involving defamation claims by former employees against their former employers are also analogous and instructive because, in the instant case Plaintiffs (attorneys) are asserting a defamation claim against Defendants (their former clients) who had hired them to perform services. In that regard, district courts in Virginia have repeatedly rejected defamation claims on the ground that alleged statements concerning a former employee's performance or competence were not defamatory under Virginia law. In McBride v. City of Roanoke Redev. & Hous. Auth., 871 F. Supp. 885, 891 (W.D. Va. 1994), aff'd, 78 F.3d 579 (4th Cir. 1996) (unpublished), a former executive director of a city housing authority sued the authority for defamation when the authority publicly stated, among other things, that he was terminated for "unsatisfactory job performance." Id. The court held that the alleged statement, even if false, was "simply not defamatory":

> [A]llegations of unsatisfactory job performance do not in and of themselves so harm [the plaintiff's] reputation as to lower him in the estimation of the community or deter third persons from associating or dealing with him. . . . The Court finds that the statement at issue does not rise above mere offensiveness.

Id. at 892.

18

Similarly, in Hockycko, 2005 WL 3132320, at *7 (W.D. Va.), the plaintiff-former executive claimed that statements about his unwillingness to become more involved with the company "damage[d] his business or profession by making other companies unwilling to hire him." The court held that "defamation does not refer to statements that are merely unpleasant or offensive," and, while the statements depicted the plaintiff in an "unflattering light," they did "not rise to the level of making him appear odious." Id. Thus, the court held that the statements were not defamatory. Id. Indeed, even statements that a former employee was terminated because he did something "very bad," "inappropriate" and "creat[ed] an improper commitment with a customer" have been found "not defamatory." Marroquin, 2009 WL 1529455, at *8 (E.D. Va.).

Applying Perk and Spencer here confirms that the Alleged Statements -- in addition to being protected opinions -- also are not defamatory. Indeed, the Alleged Statements of disappointment with Plaintiffs' work and the need to "redo" it do not make Plaintiffs appear "odious, infamous or ridiculous," nor do they assail Plaintiffs' reputation to such a degree "to lower [them] in the estimation of the community or to deter third persons from associating with them." See Spencer, 2009 WL 47111, at *6, 9 (E.D. Va.). As such, they are "not defamatory in nature." Id.

The Alleged Statements also are readily analogous to the allegations of "unsatisfactory job performance" that the court in McBride held were not defamatory. And while Plaintiffs may not like the Alleged Statements, they do not "rise above mere offensiveness" and, for that reason too, are not actionable. McBride, 871 F. Supp. at 892; Hockycko, 2005 WL 3132320, at *7 (W.D. Va.). Again, while the Statements may depict Plaintiffs in an "unflattering light," they do not rise to the level of making Plaintiffs appear "odious." See Hockycko, 2005 WL 3132320, at

19

*7 (W.D. Va.).  Although, the Complaint (¶23) <u>alleges</u> that Defendants' Statement that they were disappointed with Plaintiffs' billing practices implies an accusation of "dishonesty," the Statement says nothing about "dishonesty." Indeed, that <u>allegation</u> impermissibly stretches the Statement and any reasonable inferences therefrom beyond the Statement's ordinary meaning. <u>See</u> <u>Perk</u>, <u>Spencer</u>, <u>supra</u>; <u>see</u> <u>also</u> <u>Nemet</u>, 591 F.3d at 255 (courts "must decline to consider 'unwarranted inferences, unreasonable conclusions, or arguments'" contained in the complaint).

Finally, like the defendant in <u>Chaves</u>, 335 S.E.2d at 101, Defendants here had an "obvious bias" that further detracts from any potential defamatory sting. <u>See</u> <u>also</u> <u>Cutaia</u>, <u>supra</u>. Indeed, the Blog makes clear that Plaintiffs and Defendants were in a fee dispute and that their relationship had become "adversarial" -- with each party lobbing blows at the other.  Thus, given the commercial context in which the Statements were allegedly made, a reasonable person would interpret the Alleged Statements for what they are -- the relative and subjective views of an upset customer -- indeed, one who just been accused of stiffing the lawyers on the bill.  For this reason, those Alleged Statements lack the necessary defamatory "sting" to make them actionable.

In sum, the plain meaning of the Alleged Statements -- particularly when read in context -- is <u>not</u> defamatory in nature and, thus, not actionable.  Accordingly, the Court should reject any attempt by Plaintiffs to impermissibly stretch the meaning of the actual words used in an attempt to state a claim.  <u>Spencer</u>, 2009 WL 47111, at *8-9 (E.D. Va.); <u>see</u> <u>also</u> <u>Perk</u>, 485 S.E.2d at 143-44 (refusing to find implied defamatory meaning in allegation that an attorney failed to report certain payments to client); <u>see</u> <u>also</u> <u>Nemet</u>, 591 F.3d at 255, <u>supra</u>.

### b.    The Analysis Does Not Change Just Because Plaintiffs Allege Defamation *Per Se*

Count III purports to assert a claim for defamation "*per se.*"  Yet, this does not change the foregoing analysis as to whether the Alleged Statements are defamatory.  After all, to be

actionable, a statement must be defamatory. <u>Whitaker</u>, 2011 WL 4565430, at *3 (E.D. Va.) ("a statement is actionable only if it is both false and defamatory.") The significant difference between defamation *per se* and other defamatory statements is that compensatory damages are presumed if a statement constitutes defamation *per se*. <u>See</u> <u>Poulston v. Rock</u>, 467 S.E.2d 479, 483 (Va. 1996) ("'[a] plaintiff who proves the publication of words actionable *per se* is simply relieved of the necessity of proving the quantum of his damages for injury to reputation, humiliation and embarrassment.'") (citations omitted).

Accordingly, regardless of whether the claim is for defamation or defamation *per* se, the statements still must be defamatory. <u>Marroquin</u>, 2009 WL 1529455, at *8-9 (E.D. Va.) ("[i]f the statements at issue were objectively true, not defamatory, or protected expressions of opinion, there is no actionable defamation."; finding statements were neither defamatory nor defamatory *per se*). As discussed in the preceding section, the Alleged Statements here are <u>not</u> <u>defamatory</u> as a matter of law.

### 3.    In All Events, The Alleged Statements <u>Do Not Constitute Defamation *Per Se*</u>

Whether a statement constitutes defamation *per se* is a question of <u>law</u> for the court to decide. <u>Yeagle</u>, 497 S.E.2d at 138. Here, even if the Alleged Statements were not protected expressions of opinion (they were) and were defamatory (they were not), they still would not qualify as defamation *per se*.

A statement may qualify as defamation *per se* <u>only</u> if it (a) imputes the commission of a crime of "moral turpitude for which a party may be convicted," (b) "imputes that the person is infected with a contagious disease which would exclude the person from society," (c) "imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties"

or (d) "prejudices the party in [his or] her profession or trade." Id. at 138n. 2; see also Spencer, 2009 WL 47111, at *6 (E.D. Va.).  Plaintiffs invoke the last two categories.  (E.g., Compl. ¶38.)

Analyzing those same two categories, the court in Spencer rejected an attorney's claim of defamation per se, noting that "[n]ot every statement that reflects poorly on one's ability to practice law constitutes defamation per se." Spencer, 2009 WL 47111, at *6 (E.D. Va.).  The court held that, "a statement placing the blame on an attorney for a mistake" does not "meet the standards for defamation per se." Id. at *6 & *9.  Although the alleged statements "did not reflect positively on the attorney's ability to represent his clients," they were not actionable because, among other things, they "did not necessarily imply an unfitness to practice law or constitute an allegation of unethical or unprofessional conduct." Id. at *6.  Indeed, the court recognized that:

> [a]lthough a mistake like the one alleged to have been made by Plaintiff can have costly repercussions and form the basis of a malpractice claim, it does not rise to the level of unethical or unprofessional conduct. Barring malice or ill will [by the attorney], there is nothing necessarily unethical or unprofessional about a mistake by an attorney that prejudices his client.

Id.

As mentioned in Section III.B.2.a above, Spencer (at *6) relied on Perk.  In Perk, the court held that statements by a law firm that the plaintiff (an attorney) did not report certain payments of his former client's delinquent accounts receivable did not support a claim for defamation per se.  Perk, 485 S.E.2d at 143-44.  The court rejected the plaintiff's contention that the statements "adversely reflected on his abilities as a practicing attorney at law . . .." Id. at 144.  Moreover, the court refused to infer a defamatory charge from the statements, holding to do so, "would extend the meaning of the words used beyond their ordinary and common acceptance." Id.

As with defamation generally, cases analyzing defamation *per se* claims brought by employees against their former employers are also instructive. In <u>Hockycko</u>, 2005 WL 3132320, at *7 (W.D. Va.), <u>supra</u>, the court rejected the plaintiff-executive's claim that statements by his former employer about his unwillingness to become more involved with the company constituted defamation *per se* because they "damage[d] his business or profession by making other companies unwilling to hire him." The court held that the statements did not "directly impugn Plaintiff's general skills and abilities." <u>Id.</u> Indeed, even statements that a former employee was terminated because he did something "very bad," "inappropriate" and "creat[ed] an improper commitment with a customer" have been held not to constitute defamation *per se.* <u>Marroquin</u>, 2009 WL 1529455, at *9 (E.D. Va.).

Similarly, in another case in which the plaintiff alleged defamation *per se*, <u>Chaves</u>, 335 S.E.2d at 101, the Virginia Supreme Court rejected as a matter of law the plaintiff architect's argument that words characterizing him as "inexperienced" and his professional fees as "excessive" impugned his "character or professional standing." The court held that the words do not impute to him unfitness to perform the duties of his employment nor do they prejudice him in his profession. <u>Id.</u>

The foregoing cases confirm that even if the Alleged Statements here were statements of actual fact and were defamatory (they were neither), they still would <u>not</u> constitute defamation *per se*. For this additional reason, Count III fails to state a claim and should be dismissed.

IV.     **<u>CONCLUSION</u>**

For the foregoing reasons, Count III of the Complaint should be dismissed with prejudice

and the Court should grant Defendants such other and further relief as is appropriate.

Respectfully submitted,

TRUMP VIRGINIA ACQUISITIONS LLC,
TRUMP VINEYARD ESTATES LLC,
THE TRUMP ORGANIZATION, INC. and
JASON GREENBLATT

By:_____ /s/ James M. Bowling IV_____
                One of Their Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Harris D. Butler, III
> Rebecca H. Royals
> BUTLER ROYALS, PLC
> 100 Shockoe Slip, 4th Floor
> Richmond, VA 23219
> T:  (804) 648-4848
> F:  (804) 648-6813

_____/s/ James M. Bowling IV_____