IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| COOK, HEYWARD, LEE, HOPPER, ) <br> & FEEHAN, P.C., a Virginia ) <br> Professional Corporation, ) <br> and ) <br> DAVID D. HOPPER, Individually, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TRUMP VIRGINIA ) <br> ACQUISITIONS LLC, TRUMP ) <br> VINEYARD ESTATES LLC, and ) <br> THE TRUMP ORGANIZATION, INC., ) <br> and ) <br> JASON GREENBLATT, Individually, ) <br> ) <br> Defendants. ) | Civil Action No. 3:12CV131—HEH |

## MEMORANDUM OPINION
(Granting Defendants' Motions to Dismiss Count III)

This breach of contract and defamation action is presently before the Court on Defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The matter has been fully briefed by both parties. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons set forth herein, the Motion will be granted.

### I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiffs' well-pleaded allegations to be true, and views all facts in the light most

1

favorable to Plaintiffs. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Plaintiff's Complaint contains the following factual allegations.

This matter arises out of a contract for legal services between Cook, Heyward, Lee, Hopper & Feehan, P.C. ("Cook, Heyward") and Defendants Trump Virginia Acquisitions LLC ("Trump Acquisitions"), Trump Vineyard Estates LLC ("Trump Vineyard"), and The Trump Organization, Inc. (collectively, the "Trump Entities"). Cook, Heyward is a professional corporation engaged in the practice of law and organized under the laws of the Commonwealth of Virginia. Plaintiff David D. Hopper ("Hopper") is an attorney and member of Cook, Heyward. On September 14, 2011, Defendants Trump Entities retained Cook, Heyward to provide legal services on behalf of Trump Acquisitions and Trump Vineyard. The requested legal services involved the defense of a declaratory judgment action filed in the United States District Court for the Western District of Virginia, Charlottesville Division. Hopper served as attorney-of-record for the work performed by Cook, Heyward in this matter.

According to Plaintiffs, Cook, Heyward provided Trump Entities with invoices itemizing its fees earned and the costs advanced over the course of Plaintiffs' representation, which totaled $94,511.35. Plaintiffs claim that Trump Entities requested the initial thirty-day invoice outlining the $94,511.35 in fees to be reformatted, but otherwise did not object to the amount billed. At some later date, Cook, Heyward contacted Trump Entities regarding the status of this initial invoice. Trump entities, again, allegedly did not object to the amount and "instructed [Cook, Heyward] to send another copy of the invoice along with

the Firm's second invoice." (Compl. at ¶ 13.) Trump Entities also continued to request legal services from Plaintiffs.

Cook, Heyward claims that it continued to represent Trump Entities and later sent a sixty-day invoice reflecting fees and costs to date, including the amount indicated in the previous thirty-day invoice. Following a second inquiry into the status of payment, Plaintiffs allege that the Trump Entities, through their agents David Cohen and Eric Trump, informed Plaintiffs "that although the Trump Entities had no problem with the quality of the Firm's work, the bills were 'too high' and that [Cook, Heyward] should reduce its fees and/or agree to cap its fees while continuing the representation." (Id. at ¶ 16.) Eric Trump then suggested that Cook, Heyward reduced its fees by approximately seventy percent. Subsequently, Plaintiffs claim that they informed Trump Entities of their intention to file a motion to withdraw as counsel. (Id.) After imploring Plaintiffs to reconsider, an employee in Trump Entities' General Counsel's office allegedly informed Plaintiffs that Cook, Heyward "should expect very bad publicity" pending their withdrawal as counsel. (Id.)

After repeated requests for payment, Plaintiffs assert that they filed a motion to withdraw from representation in the Declaratory Judgment action on or about December 2, 2011. The U.S. District Court for the Western District of Virginia granted the request on December 15, 2011. (Id. at ¶ 17.)

On or around December 2, 2011, Plaintiffs also maintain that Trump Entities, through their General Counsel, Jason Greenblatt ("Greenblatt"), gave an interview to Virginia Lawyers' Weekly ("VLW"), in which he "characterized Plaintiffs' work as 'shoddy,' and further stated, in pertinent part, that 'we [Greenblatt and the Trump Entities]

3

were very, very disappointed over their [Plaintiffs'] work quality and their billing practices . . . We needed to redo their work multiple times in-house." (Id. at ¶ 18.)

Based on the foregoing, Plaintiffs filed suit in this Court, alleging breach of contract, quantum meruit, and defamation *per se*. Plaintiffs claim that Greenblatt's statements, made both individually and in his capacity as an officer and General Counsel of Trump Entities, were false. According to Plaintiffs, "Greenblatt was aware [that] the Trump Entities had not needed to, and did not 'redo [Plaintiffs'] work multiple times.'" (Id. at ¶ 19.) In fact, Plaintiffs allege that Trump entities, through various agents, had "repeatedly praised the quality of the Plaintiffs' work." (Id.) Plaintiffs further claim that the statements "constitute defamation and/or defamation *per se*, as they were false and prejudiced Plaintiffs in their profession and practice of law." (Id. at ¶ 22.)

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.... [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and

4

plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Generally, the district court does not examine extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). In addition, the Court may consider documents attached to the defendant's motion to dismiss if those documents are central to the plaintiff's claim or "sufficiently referred to in the complaint," so long as the plaintiff does not challenge their authenticity. *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396-97 (4th Cir. 2006) (per curiam); *see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

## III. ANALYSIS

Under Virginia law,[1] a plaintiff claiming defamation must prove that the defendant (1) published (2) an actionable statement with (3) the requisite intent. *See Gazette, Inc. v. Harris*, 325 S.E.2d 713, 725 (Va. 1985). To prevail on a claim for defamation, a party must prove by a preponderance of the evidence that the allegedly defamatory statements are both false and defamatory, so "harm[ing] the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (quoting Restatement (Second) of Torts § 559 (1977)); *see also Jordan v. Kollman*, 612 S.E.2d 203, 207 (Va. 2005). If the statements at issue are either not defamatory, objectively true, or protected expressions of opinion, there is no actionable defamation. *Am. Commc'ns. Network, Inc. v. Williams*, 568 S.E.2d 683, 686 (Va. 2002).

At common law, words that are actionable as defamation *per se* include words which prejudice a person in his profession or trade. *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 449–50 (Va. 2006) (citing *Fleming v. Moore*, 275 S.E.2d 632 (1981)). However, pure expressions of opinion—"speech which does not contain a provably false factual connotation, or ... which cannot reasonably be interpreted as stating actual facts about a person"—are not actionable. *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 137 (Va. 1998). "[T]he trial judge, not the finder of fact, must determine whether a statement is defamatory *per se*." *Id.* (citing *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1998)); *see also Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 850 (Va. 1985).

---

[1] Both parties agree that Virginia law governs this matter.

6

Here, Plaintiffs contend that Greenblatt, acting individually and as an agent of the Trump Entities, published false, factual statements which prejudiced Plaintiffs in their legal profession, therefore, constituting defamation per *se*. (Compl. at ¶¶ 37–38.) Plaintiffs further allege that Greenblatt made these statements "regarding Plaintiffs' fitness to perform the duties of their profession and their credibility, integrity, and truthfulness" maliciously, and "with the purpose and intent of injuring Plaintiffs' reputations." (Id. at ¶ 40.) In particular, Plaintiffs assert that, in an interview to VLW, Greenblatt (1) stated that "[Greenblatt and the Trump Entities] were very, very disappointed over [Plaintiffs'] work quality and their billing practices"; and (2) claimed that they "needed to redo their work multiple times in-house."[2] (Id. at ¶ 18.)

In their Motion to Dismiss, Defendants aver that their statements are purely opinion, and therefore are neither defamatory, nor actionable. The Court first addresses whether these statements constitute fact or opinion. Plaintiffs contend that the two statements are readily verifiable as true or false, and thus overcome this preliminary hurdle. The Court finds this argument unpersuasive. Furthermore, even assuming that either of the statements could be verified, no fact finder could "reasonably ... interpret[ ]" either of them as stating or implying "actual facts." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, (1988)) (internal quotation marks omitted). Because the Court ultimately concludes that both statements constitute an opinion, it need not reach Defendants' additional arguments.

---

[2] Plaintiffs' Complaint and Defenadnt's Motion to Dismiss both address Greenblatt's additional characterization of Plaintiffs' work as 'shoddy." (Compl. at ¶18.). In their response, however, Plaintiffs concede that their "allegations of defamation do not hinge upon Defendants' use of the word 'shoddy.' (Pls.' Mem. Opp'n Defs.' Mot. Dismiss Count III Pls.' Compl. at 8, n.2.)

7

"Whether a statement is an actionable statement of fact or non-actionable opinion is a matter of law to be determined by the court." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005) (citing *Chaves*, 335 S.E.2d at 101; *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1285 n.12 (4th Cir. 1987). The First Amendment to the U.S. Constitution limits the application of a state's defamation laws. *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008). As articulated by the Supreme Court, if a statement "cannot reasonably be interpreted as stating actual facts about an individual," it cannot be the subject of a defamation suit. *Milkovich*, 497 U.S. at 20 (internal quotation marks and citations omitted) (Pursuant to "existing constitutional doctrine . . . [a publication] must be provable as false before there can be liability under state defamation law."); *Yeagle v. Collegiate Times*, 497 S.E.2d 136 (Va. 1998); *WJLA-TV v. Levin*, 564 S.E.2d 383 (Va. 2002).

In determining whether a statement can be reasonably interpreted as an assertion of fact, this Court must examine the language used by Defendants. Specifically, the Court must assess whether the language is "loose, figurative, or hyperbolic language which would negate the impression that the writer" was stating a fact. *Milkovich*, 497 U.S. at 20. The Court must also consider the context and "general tenor of the article" in which the particular statement was made. *Id.*; *see also Snyder v. Phelps*, 580 F.3d 206, 219 (4th Cir. 2009) (A court must "assess how an objective, reasonable reader would understand a challenged statement by focusing on the plain language of the statement and the context and general tenor of its message.") "When a speaker plainly expresses 'a subjective view, an interpretation, a theory, conjecture or surmise, rather than [a] claim[ ] to be in possession of

8

objectively verifiable [false] facts, the statement is not actionable.'" *Biometrics, Inc. v. Forbes*, 151 F.3d 180, 186 (1998) (citing *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). Therefore, under this analysis, pure expressions of opinion and rhetorical hyperbole are constitutionally protected because such statements cannot be objectively characterized as true or false. *Id*; *see also Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).

Turning first to Greenblatt's statement that he and the Trump Entities were "very, very" disappointed over Plaintiffs' work quality and billing practices, any reasonable person reading this statement "would recognize based on the tenor, language, and context of the article, that the challenged statement[] constitute[s] a subjective view, and not a factual statement." *Biospherics*, 151 F.3d at 186. In general, statements of unsatisfactory job performance do not rise to the level of defamation. *See McBride v. City of Roanoke Redevelopment and Housing Auth.*, 871 F. Supp. 885, 891–93 (W.D. Va .1994) (finding no defamation where the defendant discharged the plaintiff "based on unsatisfactory job performance" and "lack of compatibility" between the plaintiff and defendant); *Hockycko v. Entrodyne Corp.*, No. 6:05CV00025, 2005 WL 3132320, at *6–7 (W.D. Va. Nov. 22, 2005). "Statements made by business competitors regarding their products and services, as well as statements made by customers regarding their satisfaction with a certain product or service, are a natural part of commercial interactions." *Cutaia v. Radius Engineering Intern., Inc.*, No. 5:11cv00077, 2012 WL 525471, at *8 (W.D. Va. Feb. 16, 2012) Thus, even if such statements "can be verified as true or false, a reasonable interpretation of the statements

within the commercial context in which they are offered indicates that they are merely expressions of opinion of an upset consumer." *Id.*

In *Cutaia*, for example, the court found that the defendant's comments about "spending a lot of money, concern over [the plaintiff's] competence, and assertion that [the plaintiff] did not properly perform its contractual duties [were] wholly dependent on the defendant's viewpoint and not subject to objective verification." 2012 WL 525471, *7. Hence, as expressions of opinion, they could not be defamatory. Similarly, in *Hockycko*, the court found defendant's statements that the plaintiff "failed to meet any reasonable measure of satisfactory performance" and "was a negative influence in recent months" to be opinion. 2005 WL 3132320, *6–7. In so holding, the court observed that statements involving job performance generally could not rise to the level of defamation. Moreover, the defendant's characterization of plaintiff as a "negative influence" constituted a relative concept, entirely dependent on the speaker's viewpoint, and, therefore, not provably false. *Id.*

Here, by the same token, Defendants' statement indicating their disappointment over Plaintiffs' work and billing culture amounts to no more than an opinion. Despite Plaintiffs' attempt to argue that the manifestation of Defendants' disappointment can be objectively verified, the concept of being disappointed is a relative one, solely contingent on the speaker's internal viewpoint. Indeed as the Defendants aptly assert, the statement that they were "disappointed over [Plaintiffs'] work quality and . . . billing practices" is far more subjective than many other statements deemed non-actionable by courts similarly situated. *See e.g. Hockycko* (holding that the statement that plaintiff "failed to meet any reasonable measure of satisfactory performance" was not actionable); *Fuste v. Riverside Healthcare*

10

*Ass'n, Inc.*, 575 S.E.2d 858, 862 (Va. 2003) (finding that statements alleging plaintiff pediatricians were "'unprofessional' and 'uncooperative,'" constituted opinions); *Chaves*, 335 S.E.2d at 99 (holding that defendant's statements that plaintiff had no prior experience in this type of project" and was charging "over 50% more than what could be considered a reasonable fee" were opinion).

Likewise, Defendants' statement that they needed to redo Plaintiffs' work-product multiple times in-house represents a relative concept requiring the exercise of discretion and individualized judgment. In *Spencer v. American Intern. Group, Inc.*, for example, the defendant attorney stated in a local publication that it had insufficient evidence to bring an action against the other party. No. 3:08CV00591, 2009 WL 47111 *6–7 (E.D. Va. Jan. 6, 2009). Ultimately concluding that the statement was "nothing more than [the defendant's] subjective assessment of the evidence against [the other party]," the court posited that an "attorney's opinion as to whether available evidence fits into the criteria for a viable malpractice claim requires the exercise of discretion and individualized judgment." *Id.* Correspondingly, in the immediate case, the alleged necessity of redoing Plaintiffs' work essentially depended on Defendants' own evaluation and assessment. As such, the statement is a protected expression of opinion and not actionable for the purposes of Plaintiff's defamation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be granted as to Count Three. An appropriate Order will accompany this Memorandum Opinion.

                                       /s/
                              Henry E. Hudson
                              United States District Judge

Date: May 23, 2012
Richmond, VA